## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**TRANELL HARRIS,**
*on behalf of herself and on behalf*
*of all others similarly situated*,

     **Plaintiff,**

**v.**                      **CASE NO.:**

**HUMANA, INC.,**

     **Defendant.**
_____/

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Tranell Harris ("Plaintiff"), by and through undersigned Counsel, and on behalf of herself and all others similarly situated, brings the following Class Action as a matter of right against Defendant, Humana, Inc. ("Defendant") under the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. §§ 1681a–x, and in support of her claims states as follows:

### NATURE OF THE CASE

1.    Plaintiff brings this action against Defendant for violations of the FCRA in the employment context. The FCRA imposes several important requirements on employers that use a background checks as part of their hiring processes, which are designed to protect consumers like Plaintiff.

2.    Defendant operates a private health insurance company and is headquartered in Louisville, Kentucky. Defendant does business across the country, including in Hillsborough County, Florida.

3.     As part of its hiring processes, Defendant uses consumer reports (commonly known as background checks) to make employment decisions. Because such background checks are "consumer reports" under the FCRA and Defendant's employment decisions are based in whole or in part on the contents of the background checks, Defendant is obliged to adhere to certain requirements of the FCRA.

4.     Defendant obtained the consumer reports at issue in this action from a non-party consumer reporting agency, Sterling.

5.     Obtaining and using consumer reports in any context is presumptively illegal. The FCRA provides the limited, and exclusive, statutory bases for possession and use of such report. These permissible purposes include, among other circumstances, employment.

6.     When using criminal background reports for employment purposes, employers must, before declining, delaying, withdrawing, or terminating employment based in whole or in part on the contents of the report, provide job applicants like Plaintiff with a copy of their respective background reports as well as a written summary of their rights under the FCRA. 15 U.S.C. § 1681b(b)(3). This requirement is commonly known as pre-adverse-action notice.

7.     Providing a copy of the criminal background report as well as a statement of consumer rights before making an adverse employment decision arms the nation's millions of job applicants with the knowledge and information

needed to challenge inaccurate, incomplete, and misleading public-records-based reports.

8.     The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision. Even where reports are accurate, the FCRA still demands that notice be given so applicants have an opportunity to address any derogatory information with employers before a hiring decision is made.

9.     As set forth more fully below, Plaintiff was denied employment with Defendant because of information in a background check but without Defendant first providing her with a copy of the report on which that decision was based and an opportunity to dispute or discuss the information with Defendant ***before*** Defendant chose not to hire her.

10.     Plaintiff brings a class claim under 15 U.S.C. § 1681b(b)(3)(A) because, by taking adverse employment action based on undisclosed consumer report information against Plaintiff and other putative class members without first providing them with a copy of the pertinent consumer report and a summary of their rights, Defendant violated that Section of the FCRA.

## JURISDICTION AND VENUE

11.     This Court's jurisdiction over Plaintiff's claims is conferred by 15 U.S.C. § 1681p.

12.     Venue is proper in this Court because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

**PARTIES**

13.     Plaintiff is a "consumer" as protected and governed by the FCRA.

14.     Defendant is an "employer" and "user" of consumer reports as defined by the FCRA.

15.     Defendant used "consumer reports" for "employment purposes" as those terms are defined in the FCRA.

**FACTUAL ALLEGATIONS**

***Defendant's Systemic Violations of 15 U.S.C. § 1681b(b)(3)***

16.     Plaintiff applied in February of 2021 to work for Defendant as a Pharmacy Technician.  In fact, Plaintiff has worked as a Pharmacy Technician for most of her professional life.

17.     Based on her outstanding experience and qualifications, Defendant offered Plaintiff the job, but the offer was made contingent on her passing a background check.

18.     On February 25, 2021, Plaintiff received an email from Sterling stating: "Congratulations on joining the Humana team! As part of your new-hire tasks, Humana requires a background check. Sterling Talent Solutions is a screening company working with Humana to complete this process."

19.    Plaintiff expected no trouble in passing the background check, as she has no criminal history (other than a minor reckless driving conviction from nearly a decade ago) and is married to a well-respected military veteran.

20.    On February 25, 2021, Plaintiff provided to Defendant the documents needed to initiate the background check process.

21.    Next, on February 26, 2021, Plaintiff received an email informing her that Sterling provided Humana with her background check.

22.    On March 4, 2021, Plaintiff received an email from "Darius Dooms," a Sterling employee, asking Plaintiff to provide additional information as to one of Plaintiff's former employers.

23.    Specifically, the March 4, 2021, email sought information from her former employer, Pharmacy Unlimited.  According to the email, "[a]fter several attempts to contact the entity, we have been unable to verify your employment. To ensure successful processing of your application, please provide a copy of your 2020-2021 tax documents to complete employment verification requirement. if you are asking for the current year please provide last issued paystub."  Plaintiff provided the information requested right away.  Importantly, the email said nothing about any other issues in Plaintiff's background report.

24.    Sterling completed Plaintiff's background report on March 5, 2021, and provided it to Defendant.

25.    Next, also on March 5, 2021, Plaintiff received an email from Sterling informing her as follows, "Your background check is ***now complete***. To access a

copy of your background check report, please click on the below link." (emphasis added).  Thus, Plaintiff then assumed her background check was complete and that she would soon be starting her job with Defendant.

26.     And rightfully so.  In fact, on March 16, 2021, Plaintiff received another email again confirming her start date with Defendant.  It read as follows: "Hello!  We are excited you are joining us at Humana and we want to provide you some information that will help you plan for next week.  Your Welcome Agent will contact you before the end of this week with details for your first day. Your Leader will also be in contact to welcome you and share a day 1 agenda."

27.     Defendant rescinded its offer of employment to Plaintiff on March 18, 2021, via email from Berenice Castro, a member of Defendant's Corporate Human Resources Department, without providing information required in an adverse action notice.  In the email Defendant cited the reason for not hiring Plaintiff is as follows: "This letter is to inform you that Humana, Inc. and its related entities ("Humana") has decided to withdraw its conditional offer of employment to you.  Humana made a formal offer of employment to you.  We have not been able to complete your background check due to your extended delay in completing the required tasks, we cannot offer you a position."

28.     Plaintiff was caught completely off guard since she had provided all information as requested by Sterling and, in fact, Sterling already confirmed *in writing* her background check was "complete."  Moreover, just two days prior, she had received an email confirming her start date.

29.    If Defendant had provided Plaintiff with sufficient time in advance before sending the adverse notice, Plaintiff could have clarified any confusion in her report by specifically addressing any questions about her report Defendant had, including any inaccuracies contained therein, or at least pleaded her case to continue her employment.

30.    But that did not happen.  Instead, on March 18, 2021, Plaintiff lost her job, lost her salary, and even lost the benefits she would have received from Defendant, without being given the opportunity to properly address the contents of her report.

31.    Prior to filing this lawsuit, Plaintiff approached Defendant about the FCRA violations raised herein.  Defendant claims to have sent Plaintiff a pre-adverse notice on March 8, 2021, although thus far it has not yet produced an actual copy of the alleged pre-adverse notice.  More importantly, Plaintiff disputes having received any such pre-adverse notice.

32.    Even if Defendant did send Plaintiff a supposed pre-adverse notice, Defendant still violated 15 U.S.C. § 1681b(b)(3) because of the way in which its hiring process is set up.

33.    In employing Sterling to provide it with background checks, Defendant permits Sterling to apply Defendant's hiring criteria to the results of those background checks.

34.    In Plaintiff's case, for instance, Sterling created a report on or about March 5, 2021 that falsely showed "discrepancies" related to verification conducted

by Sterling as to three of Plaintiff's former employers. The report also included an "alert" related to a reckless driving misdemeanor from 2013.

35.    For example, the report listed "discrepancy" as to Plaintiff's job title listed on her application for the three jobs (specifically as to Pharmacy Unlimited, DLH Solutions, Inc., and Omnicare, a CVS Health Company) all of which she listed Pharmacy Technician in one form or another.  Contrary to the Sterling report, Plaintiff did, in fact, work as a Pharmacy Technician for those three former employers.  That is her profession of choice—and has been for many years.  Thus, it defies logic for Defendant to base any adverse action on such information.  At an absolute minimum, Plaintiff should be afforded the right to explain her employment history.

36.    Based on Defendant's hiring criteria, on March 5, 2021, Sterling graded Plaintiff's report results as "Rescind," signifying to Defendant that it should withdraw Plaintiff's already-accepted job offer. "Rescind" was displayed on Plaintiff's report in red font, compared to the majority of the report being in standard black lettering.

37.    This grading, or adjudication as it is often called, occurs without any genuine input or review by Defendant through the hundreds or thousands of times it occurs with applicants for jobs with Humana.

38.    Discovery will show that "Rescind" or other terms Sterling uses like "Does Not Meet Criteria – Review" are pseudonyms for "ineligible for employment." When a person from Defendant sees that adjudication result, he or

she knows that any review will confirm that Sterling believes the person to be ineligible for hire.

39.     The results of the adjudications are placed into Defendant's applicant-tracking system with little, if any, genuine review by anyone at Defendant.

40.     For example, while someone at Defendant may have viewed the grading of Plaintiff "Rescind" by Sterling, no one at Defendant does anything to verify any of the information that goes into a report by Sterling, and likewise no one at Defendant takes the time to ensure that any notice has been provided to the applicant before the adjudication result of ineligible makes its way into Defendant's applicant-tracking system.

41.     The "Rescind" finding is no mere label. It is a decision that is almost instantly incorporated into Defendant's computerized applicant-tracking system, whereby anyone viewing Plaintiff's status can see that Sterling has completed the background check and deemed her ineligible to be employed with Defendant.

42.     The provision of the FCRA notice to applicants that an adverse action may be taken against them is likewise automatic and perfunctory. When an applicant is adjudicated as "Rescind" or the like and that notation is placed into Defendant's applicant-tracking system, it signals Sterling's own computer system to key-up an email to be sent to the applicant explaining that there is information on the applicant's background check that may result in denial of employment.  But, since the adjudication of "Rescind" results in automatic the denial of employment

immediately upon the assignment of that grade by Sterling, the email is sent after the employment decision has been made.

43. Plaintiff's circumstances bear these facts out. Sterling did a background check on her, and graded her as "Rescind" based on the results of that check as of March 5, 2021.

44. Plaintiff was then asked for additional information which she provided, none of which had any real impact on the purported adverse information contained in her Sterling report. Then, after Plaintiff submitted what was requested to Defendant, and was even told that her background check was "complete," Defendant then withdrew its offer of employment to Plaintiff by claiming "[w]e have not been able to complete your background check due to your extended delay in completing the required tasks, [so] we cannot offer you a position."

45. Ms. Berenice Castro, Defendant's HR employee, and the person who withdrew Plaintiff's offer of employment via email on March 18, 2021, likely knew that the adjudication result "Rescind" meant Plaintiff could not be hired, so she communicated that fact to Plaintiff by email.

46. Defendant's termination of Plaintiff's employment caused Plaintiff damages in the form of lost pay, and emotional damages due to stress caused by the loss of a job she should certainly should have retained.

47. Furthermore, Defendant caused Plaintiff to suffer an informational injury by denying her information in the form of a compliant pre-adverse and

adverse action notice containing a copy of the consumer report at issue, and a copy of her rights under the FCRA, both of which she is plainly entitled under 15 U.S.C. § 1681b(b)(3). These same injuries are shared by all members of the putative Pre-Adverse Action class Plaintiff seeks to represent in this litigation.

48.    By depriving Plaintiff of all of this information, Defendant robbed Plaintiff of the ability to review the adverse information about her and explain to Defendant any mitigating factors. Such factors include that no discrepancies existed as to the job titles listed by Plaintiff as to her prior jobs at Pharmacy Unlimited, DLH Solutions, Inc., and Omnicare, a CVS Health Company, but Sterling inaccurately reported that, in fact, there were.

49.    Consequently, Plaintiff was also deprived of the opportunity to explain to Defendant why Sterling and Defendant's interpretation of her report did not warrant termination and/or a withdrawal of her employment offer.

50.    Plaintiff and Pre-Adverse Action Class Members suffered an invasion of privacy as a result of Defendant using their private information in a manner which it was not entitled to use it pursuant to the law. 15 U.S.C. § 1681b(b)(3) contains restrictions on the circumstances in which a consumer report can be used as a basis for adverse employment action.

51.    One of those conditions is that a report may only be used as a basis for adverse employment action when the consumer to whom the report relates has previously been provided with a copy of the report and a summary of the consumer's rights. Absent the fulfillment of these conditions, the employer is not

allowed to rely on the private information contained in the report. By using Plaintiff's information in a manner not allowed by law, Defendant invaded her privacy.

52.     Plaintiff also suffered actual damages because she experienced a job loss, and wage loss, as a result of Defendant's failure to provide pre-adverse action notice. Had Defendant given Plaintiff an opportunity to explain its erroneous interpretation of her report before it made the decision to terminate her, it is entirely possible Plaintiff would have been permitted to keep her job and, in turn, her wages.

53.     Plaintiff also experienced emotional distress due to Defendant's failure to provide the required pre-adverse action notice and feelings of helplessness and humiliation due to her inability to explain why her report was inaccurate.

54.     Due to Defendant's refusal to provide the statutorily-required pre-adverse action documentation (including a copy of her consumer report and a summary of her rights under the FCRA) prior to the adjudication of her report on March 5, 2021, when her report was labeled as "Rescind," Plaintiff suffered harm to her reputation because, before she was able to explain the information in her consumer report, Defendant made the decision to terminate her employment.

55.     Plaintiff continues to suffer emotional distress due to fear Defendant will inform prospective or future employers that she was fired due to issues with her background where none truly exist.

56.    Based on the foregoing violations, Plaintiff asserts FCRA claims against Defendant on behalf of herself and the class of Defendant's former and prospective employees.

57.    On behalf of herself and the Putative Class, Plaintiff seeks statutory damages, costs and attorneys' fees, equitable relief, and other appropriate relief pursuant to the FCRA.

### *Defendant's Violations Were Willful*

58.    The FCRA permits the recovery of statutory damages of between $100 and $1,000 for willful violations. 15 U.S.C. § 1681n(a). Plaintiff and the putative class may also recover uncapped punitive damages upon a finding of willfulness. *Id.*

59.    Willfulness in the context embraces knowing violations and reckless ones as well.

60.    Defendant has ample ability, pursuant to guidance by the statute itself, court decisions, and statements from the Federal Trade Commission, to bring its processes into compliance with Section 1681b(b)(3).

61.    The statutory requirements are simple: before denying, delaying, or terminating employment based on the contents of a consumer report, the employer must provide the consumer that report and a written summary of his or her FCRA rights with enough time for the consumer to act on any information the report contains before an employment decision is made.

62.    Yet, despite many years and plenty of authoritative guidance, Defendant has failed to bring its hiring process in line with the FCRA's easy-to-follow requirements.

63.    In accordance with the FCRA's requirements, the consumer reporting agency from which Defendant acquired consumer reports during the two years preceding the filing of this Complaint required Defendant to certify that it would comply with the FCRA's pre-adverse action notice requirements if those requirements became applicable. *See* 15 U.S.C. § 1681b(b)(1).

64.    Thus, Defendant ***knew*** that it had an obligation to provide current or prospective employees with copies of their reports and summaries of their rights prior to taking adverse action based in whole or in part on a consumer report.

65.    At the very least, Defendant's conduct was reckless, as it knew perfectly well what those requirements were, yet fell short of them even after settling a lawsuit alleging that its process violated the statute.

## CLASS ACTION REQUIREMENTS

66.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff asserts her claim in Count I on behalf of a Putative Background Check Class defined as:

> **All consumers in the United States who (1) were the subject of a consumer report provided to Defendant, (2) for whom, based in whole or in part on information contained in those consumer reports, (3) there was entered into Defendant's computer system a code for which a person was ineligible for hire or continued employment, and (4) for whom Defendant did not provide the consumer with a copy of the consumer report and written summary of FCRA rights at least five business days before the code was entered in**

**Defendant's system, (5) for the five years preceding the date of this action.**

67.   Numerosity: The Putative Class is so numerous and geographically dispersed that joinder of all Class members is impracticable. Defendant regularly obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, as a basis for adverse employment action. Plaintiff is informed and believes that during the relevant time period, hundreds or thousands of Defendant's employees and prospective employees satisfy the definition of the Putative Class.

68.   Typicality: Plaintiff's claims are typical of the members of the Putative Class. Defendant typically uses consumer reports to conduct background checks on employees and prospective employees. The FCRA violations suffered by Plaintiff are typical of those suffered by other Putative Class members, and Defendant treated Plaintiff consistent with other Putative Class members in accordance with its standard policies and practices.

69.   Adequacy: Plaintiff will fairly and adequately protect the interests of the Putative Class, and has retained counsel experienced in complex class action litigation.

70.   Commonality: Common questions of law and fact exist as to all members of the Putative Class and predominate over any questions solely affecting individual members of the Putative Class, including but not limited to:

a) Whether Defendant uses consumer report information to conduct background checks on employees and prospective employees;

b) Whether Defendant's background check practices and/or procedures comply with the FCRA, including as to pre-adverse notice;

c) Whether Defendant's violations of the FCRA were willful;

d) The proper measure of statutory damages; and

e) The proper form of injunctive and declaratory relief.

71.   This case is maintainable as a class action because prosecution of actions by or against individual members of the Putative Class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual Class member's claim as separate action would potentially be dispositive of the interest of other  individuals not a party to such action, impeding their ability to protect their interests.

72.   This case is maintainable as a class action because Defendant has acted or refused to act on grounds that apply generally to the Putative Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

73.   Class certification is also appropriate because questions of law and fact common to the Putative Class predominate over any questions affecting only

individual members of the Putative Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Putative Class do not have an interest in pursuing separate actions against Defendant, as the amount of each Class Member's individual claims is small compared to the expense and burden of individual prosecution.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant' practices. Since the claims in this case revolve around lack of notice and failure to certify certain things to Universal, Class Members are not likely to learn of their claims outside of litigation. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

**FIRST CLASS CLAIM FOR RELIEF**
**Failure to Provide Copy of Consumer Report in Violation of**
**15 U.S.C. § 1681b(b)(3)(A)**

74.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

75.     Defendant used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the Pre-Adverse Action Class.

76.     Defendant violated the FCRA by failing to provide Plaintiff and other

Pre-Adverse Action Class members with a copy of the consumer report that was used to take adverse employment action against them. 15 U.S.C. § 1681b(b)(3)(A).

77.     The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Pre-Adverse Action Class Members under 15 U.S.C. § 1681b(b)(3)(A).

78.     Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission, and under long-established case law. Defendant obtained or had available substantial written materials which apprised them of its duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

79.     Defendant's willful conduct is also reflected by, among other things, the following facts:

a)     Defendant is a national corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful;

b)     Defendant knew or had reason to know that its conduct was inconsistent with published FTC guidance, and case law, interpreting the FCRA, as well as the plain language of the statute;

c)    Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

d)    In accordance with the FCRA's requirements, the consumer reporting agency from which Defendant acquired consumer reports during the two years preceding the filing of this Complaint required Defendant to certify that it would comply with the FCRA's pre-adverse action notice requirements if those requirements became applicable. *See* 15 U.S.C. § 1681b(b)(1);

e)    The consumer reporting agency that provided Plaintiff's consumer report information to Defendant has published numerous FCRA-related articles and compliance self-help materials and provided them to Defendant, including as to pre-adverse notice; and, finally,

80.    Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2).

81.    Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## **PRAYER FOR RELIEF**

***WHEREFORE***, Plaintiff, on behalf of herself and the Putative Class, prays for relief as follows:

      a)      A determination that this action may proceed as a class action under Rule 23(b)(1), and (2) and (3) of the Federal Rules of Civil Procedure;

      b)      Designation of Plaintiff as class representative and Plaintiff's Counsel as counsel for the Putative Class;

      c)      Issuance of proper notice to the Putative Class at Defendant's expense;

      d)      A declaration that Defendant committed multiple, separate violations of the FCRA;

      e)      A declaration that Defendant acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

      f)      An award of statutory damages as provided by the FCRA, including punitive damages;

      g)      An award of reasonable attorneys' fees and costs as provided by the FCRA;

      h)      Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff and the Putative Class demand a trial by jury.

DATED this 25th day of March, 2022.

Respectfully submitted,

*/s/ Brandon J. Hill*
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Avenue, Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: gnichols@wfclaw.com

and

**Craig C. Marchiando**
Florida Bar No. 1010769
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel. (757) 930-3660
Fax (757) 930-3662
Email:  craig@clalegal.com